UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN M.,[1]

                         Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.

_____

DECISION AND ORDER

1:20-CV-01280 CJS

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits.   Now before the Court is Plaintiff's motion (ECF No.10) for judgment on the pleadings and Defendant's cross-motion (ECF No. 11) for the same relief.   For the reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial

---

[2]  Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v.*

*Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

In the administrative proceedings before the Commissioner, Plaintiff claimed to have become disabled as of June 1, 2012.   Plaintiff was insured for SSDI benefits through December 31, 2018.

Plaintiff previously worked as a New York State Trooper for thirty-one years, retiring in 2012. (Tr. 47).   While working as a Trooper, and continuing after his retirement from the New York State Police, Plaintiff was also self-employed part-time, for over ten years, between 2002 and 2013,[3] as a "vehicle locator" or "wholesale car locator" for auto dealers. (Tr. 44, 45-46, 221). Plaintiff earned substantial income from his work as a car locator; for example, he earned $22,000 in 2010, $33,000 in 2011, and $30,000 in 2012.[4] (Tr. 45, 183).   Plaintiff described his

---

[3] Tr. at p. 219 (Indicating that Plaintiff worked as a "vehicle locator" between January 2002 and September 2013).
[4] After his alleged disability onset date, Plaintiff had some continued employment as vehicle locator, which the Commissioner found did not meet the definition of substantial gainful employment ("SGA").   More specifically, Plaintiff earned $6,873.92 in 2013. Tr. 190.

work as a car locator as follows:

> Basically, I located wholesale cars for a friend of mine who was a dealer, and he – he would either maybe buy – I would call him to see if he wanted to buy the cars or if he didn't want to buy the cars.   And if he bought the cars, he gave me a little bit of money for locating the cars.
>
> \*\*\*
>
> I would go around to dealerships, and I got to know a lot of people over the years and being a state trooper.   And my one friend—well, there's a couple guys that had dealer's licenses, and I would go to the dealerships and talk to the used cars managers and cars that they would take in on trade, they had to sell them.   And some they would take to auction and some they wouldn't, and the guys that had the dealer's license[s], I would call them up and say, hey, there a [1995] car sitting back here; the dealer wants x amount of dollars for it; are you interested?   And if they say yes or no, if they would buy it, then they would pay me like a finder's fee for those cars.
>
> \*\*\*
>
> It was basically an outside [outdoors] job because all the vehicles that the dealerships would take in on trade would be in the back lot.   And some of the back lots were nicer than others, but you'd go in the back lot in all kinds of weather and look at the car, open the hood, check the car, get into the car, turn the car on, drive the car, you know, check the tires, all those different things.
>
> And that after you thought – found out the problems, whatever the car may have had, then I, as the layperson – I'm not a mechanic or anything—would tell the people that I was trying to sell the car to that, I mean, it's a nice car, it needs four tires, the oil was dirty, the interior is filthy, things like that . . . .
>
> And if they decided they wanted the car, I would go in any say to the used car manager, you know, my guy will buy the car for the price that you want to sell it for, and that would be the end of my job.   And then the two of them would get together and finish the paperwork and do everything else.

(Tr. 44, 45-46, 58-59).

On June 24, 2019, after Plaintiff's claim was denied initially,[5] a hearing was conducted

---

[5] In denying the claim initially, the Commissioner found that Plaintiff was not disabled because he had the RFC to

before an Administrative Law Judge ("ALJ"), at which Plaintiff appeared with his attorney.   The ALJ took testimony from Plaintiff and a vocational expert ("VE").   The VE indicated, in pertinent part, that Plaintiff's past relevant work as an automobile locator, as actually performed by him, did not perfectly match any occupation listed in the Dictionary of Occupational Titles ("DOT"), but most-closely resembled that of "automobile locator," DOT No. 296.367-010.   Upon cross-examination by Plaintiff's attorney, the VE agreed that Plaintiff's past work might also fit under the occupation titled "sales representative, automotive leasing," DOT No. 273.357-014.   The VE further indicated that Plaintiff's skills from his past work as an automobile locator were transferable to either of the aforementioned DOT listings.[6]   Additionally, the VE testified that a claimant with Plaintiff's age, education and work experience, who was capable or light work involving no concentrated exposure to respiratory irritants, could perform Plaintiff's past work as an automobile locator. Tr. 56.

On July 25, 2019, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the application date and the last-insured date. Tr. 21-30.   The ALJ applied the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of "gastroesophageal reflux disease ("GERD"), degenerative joint disease of the bilateral knees (with history of surgical intervention bilaterally), and prostate cancer [that had been successfully treated with radiation]." Tr. 23.[7]    The ALJ further found that Plaintiff had the

perform light work with some environmental limitations (avoiding respiratory irritants) and had skills transferable from his employment as a State Trooper that would allow him to perform three specific light jobs. Tr. 65-78.
[6] *See*, Tr. at p. 60 ("Same skills are really utilized in both jobs – similar.").
[7] The ALJ found that Plaintiff's impairments, including non-severe impairments consisting of hernia, lower back pain, and chronic cough with unspecified chest pain, did not, either singly or in combination, meet or medically equal a listed impairment. Tr. 24-25.   Plaintiff has not objected to the ALJ's findings at the first three steps of the sequential evaluation.

RFC to perform work at the light exertional level with the following limitations: "The claimant should avoid concentrated exposure to dust, fumes, gases, smoke and other pulmonary irritants." Tr. 25.   The ALJ found, based on the VE's testimony, that with such RFC, Plaintiff could not perform his past relevant work as a State Trooper, but could perform his past work as an automobile locator.

In that regard, the ALJ first discussed why he found that Plaintiff's work as an automobile locator met the requirements of past relevant work:

> In order to be considered past relevant work, a job must have been performed within the past fifteen years, lasted long enough for the individual to learn now to do the job, and been substantial gainful activity (20 CFR 404.1560(a)(1)).   The claimant completed a Job History Report asserting that he worked as a state highway police officer from 1981 through 2012, as well as testimony regarding the automobile locator job from 2003 to 2013 (self employment), which occurred during the last fifteen years.   (Ex. 1E, 3E, 3D, HT).   Based on the vocational expert's testimony and the claimant's job history, the time the claimant spent working as a state highway police officer and an automobile locator meets the duration requirement, as skilled work at SVP 6 requires no more than 2 years to learn (and both jobs were performed for over a decade) (Dictionary of Occupational Titles Fourth Ed., Appendix C). Finally, the claimant's earnings record shows that the claimant worked as a state highway police officer and an automobile locator at the level of presumptive substantial gainful activity as defined by our Regulations for the required duration. (Ex. 3D, 4D, HT).   Because all three requirements have been satisfied, I consider the claimant's work as a state highway police officer and an automobile locator to be past relevant work.

Tr. 29.

Then, the ALJ found that Plaintiff could, with the previously-mentioned RFC, still perform his past work as an automobile locator, as both actually and generally performed:

> [T]he vocational expert testified that if an individual had the claimant's [RFC], such an individual could perform the claimant's past relevant work as an automobile locator.   Admittedly, there was some discussion about the agreement between

7

the DOT's characterization of this work and the claimant's testimony [about] the job. The vocational expert, in discussion with the claimant's representative, stated that even if the automobile locator job had no precise DOT counterpart, there was still nothing in the claimant's testimony to suggest that the exertional level exceeded light-type work.   More importantly, the representative offered another job that might better describe the claimant's duties:   a sales representative (auto leasing) (DOT# 273.357-014), light as generally performed, skilled at SVP 5.   The vocational expert testified that not only would the claimant be able to perform this type of work, but that this work would afford the claimant the type of transferable skills to other occupations, such as the automobile locator job.   As it stands, regardless of the DOT characterization, the vocational expert testified that his findings were based on his learning, expertise, and professional experience of over 30 years in the field. (Ex. 16E).   Therefore, in reviewing all of this testimony, I find that the claimant could perform his past relevant work as an automobile locator (or more generally, his automobile related light-type work), as it is generally and actually performed.

Tr. 29.

Consequently, the ALJ found that Plaintiff was not disabled.   Plaintiff sought review by the Appeals Council, but the Appeals Council declined to review the ALJ's ruling.

Plaintiff then commenced this action, in which he contends that the Commissioner's decision denying benefits must be reversed for the following reasons: 1) the ALJ erred, when making his RFC determination, by failing to consider evidence of additional limitations that would preclude competitive work, namely, "symptoms of urinary frequency and intermittency, pain in back, knees and chest; fatigue, chronic cough, and poor sleep function that support limitations in off-task and missed work limitations, as well as [in] prolonged standing";[8]  2) the ALJ erred at Step Five[9] of the sequential evaluation by finding that Plaintiff's past work as an automobile

---

[8] ECF No. 10-1 at pp. 2, 28.
[9] Actually, the ALJ found Plaintiff not disabled at Step Four, and therefore never reached Step Five.

locator met the requirements of SGA and "past relevant work";[10] and 3) the ALJ further erred at Step Five by finding that Plaintiff could perform his past work as an automobile locator or similar work for which he had transferable skills.[11]

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.

The Court has carefully reviewed and considered the parties' submissions, including the entire administrative transcript.

DISCUSSION

The ALJ's Alleged Failure to Include "Additional Limitations" in His RFC Finding

Plaintiff contends that the ALJ's RFC finding was erroneous since it failed to "account for" all of his work-related limitations.  In particular, Plaintiff asserts that the ALJ erred by failing to consider evidence of additional limitations that would preclude competitive work, namely, "symptoms of urinary frequency and intermittency, pain in back, knees and chest; fatigue, chronic cough, and poor sleep function that support limitations in off-task and missed work limitations, as well as [in] prolonged standing."[12]  Plaintiff maintains that the ALJ should have incorporated those limitations into the RFC finding since his testimony about those alleged limitations was "consistent with the record as a whole," and, more specifically, that "the record supports Plaintiff would require some form of off-task limitation to deal with urinary frequency/intermittency, chest pain and chronic cough with standing, and fatigue from conditions

---

[10] ECF No. 10-1 at pp. 2, 23.
[11] ECF No. 10-1 at pp. 2, 16.
[12] ECF No. 10-1 at pp. 2, 28.

and sleep dysfunction due to frequent [nighttime] awakenings from conditions."[13]   Plaintiff further maintains that the ALJ should have found his reported symptoms credible, since prior to the alleged disability onset date he had a good work record, consisting of a 31-year career in law enforcement.[14]

Particularly with regard to Plaintiff's alleged urinary symptoms, he further contends that the ALJ "failed to seek clarification" from a nurse at his treating urologist's office, who completed a form indicating that in connection with treating Plaintiff's prostate cancer, that office had "not assessed" Plaintiff's ability to perform any work-related functions.[15]   The Court construes this as an argument that the ALJ erroneously failed to develop the record.

However, the Court finds that Plaintiff's arguments on these points lack merit.   To begin with, insofar as Plaintiff contends that the ALJ failed to consider his subjective complaints about the aforementioned "additional limitations," such as his alleged need to urinate frequently or his alleged inability to stand for long periods, he is mistaken, since the ALJ expressly discussed those symptoms in his decision.[16]   More generally, the ALJ stated that he had considered "all" of Plaintiff's symptoms, and the Court sees nothing to suggest that he did not do so.[17]

The ALJ found, however, that Plaintiff's subjective complaints were not consistent with the record as a whole, for reasons that he explained.[18]   For example, the ALJ discussed how

---

[13]  ECF No. 10-1 at p. 29.

[14]  ECF No. 10-1 at p. 30.

[15]  Tr. 372-374 (Report by M.D. Webb, RN, of Cancer Care of Western New York).

[16]  See, Tr. 24 (noting that complaints of back pain and cough had only been episodic and "acute," not ongoing, and that the RFC accounted for the alleged cough by limiting Plaintiff's exposure to respiratory irritants); Tr. 25-26 (noting Plaintiff's complaints of knee pain, chest pain, sleep disturbance and inability to stand for long periods).

[17]  Tr. 25.

[18]  Tr. 26-28; see also, Tr. 282 ("[His] physical examination today was entirely within normal limits except for his skin."); 468 (Office note dated March 9, 2018, discussing Plaintiff's abilities to engage in various physical activities, and noting that Plaintiff denied daytime sleepiness: "does not feel tired, fatigued or sleepy during

Plaintiff's consultative physical examination had been "unremarkable" except insofar as the examiner had noted Plaintiff's history of mild degenerative changes in the lumbar spine and knee "without corresponding clinical signs."[19]   Additionally, with regard to Plaintiff's alleged urinary symptoms, the ALJ discussed how Plaintiff's treatment notes "showed little ongoing dysfunction," and how Plaintiff "himself conceded [to his urologist] that his urinary dysfunction was minimal and he was generally pleased."[20]

In sum, Plaintiff has not shown that the ALJ's RFC finding is affected by legal error or unsupported by substantial evidence.   Rather, Plaintiff's contention that the ALJ should have included additional limitations in the RFC finding amounts to an impermissible request for this Court to re-weigh the evidence. *See, e.g., Tammy S. v. Comm'r of Soc. Sec.*, No. 5:21-CV-00156 (MAD), 2022 WL 3444968, at *5 (N.D.N.Y. Aug. 17, 2022) ("However, even if Dr. Federico's treatment notes provide support for Plaintiff's view of the medical evidence, it is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.' *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013).").

Additionally, the Court finds that Plaintiff has not shown that the ALJ was required to develop the record by seeking clarification concerning Plaintiff's urological symptoms, since there was no obvious gap in the record on that point.[21]

---

daytime"); Tr. 473 ("no leg weakness and no difficulty walking"); 565 ("No arthritis or muscle pains or aches."); 570 ("He is exercising regularly without limitations.").

[19]  Tr. 27.

[20]  Tr. 28, 606-607.   Indeed, the Court observed several instances in the record in which Plaintiff denied urinary symptoms. *See,e.g.,* Tr. 274, 473 ("no dysuria and no urinary frequency"); Tr. 565 ("No dysuria, polyuria or hematuria"); 610 ("Patient is without any complaints.   Denies dysuria, urgency or frequency."); *but see,* Tr. 622 (complaining of "daytime frequency").

[21]  *See, e.g., Gonzalez v. Colvin*, No. 1:15-CV-00767(MAT), 2018 WL 1040250, at *2 (W.D.N.Y. Feb. 24, 2018).

<u>The ALJ's Alleged Error in Finding that Plaintiff's Past Work as an Automobile</u>
<u>Locator Qualified as Substantial Gainful Employment and Past Relevant Work</u>

Plaintiff next maintains that the ALJ erred in finding that his past work as an automobile locator met the requirements of SGA and "past relevant work."[22]   As mentioned earlier, Plaintiff performed that work on a part-time basis over a period of ten years, and, as the ALJ commented at the hearing, earned "pretty significant self-employment money" from that activity, sometimes exceeding thirty-thousand dollars annually.[23]  Plaintiff nevertheless contends that the ALJ erred since he did not discuss why he disagreed with a state disability examiner's finding that Plaintiff's work as an automobile locator was *not* SGA.   In that regard, Plaintiff is alluding to a reference in the state disability examiner's initial decision denying benefits that asserted, without any accompanying explanation, that Plaintiff's work as a vehicle locator "was not SGA." *See*, Tr. 75 ("Vehicle Locator, 2002-2013, was not SGA.").[24]   Plaintiff describes the ALJ's alleged error as

---

(""Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). 'Whether dealing with a *pro se* claimant or one represented by counsel, the ALJ must 'develop [the claimant's] complete medical history.'' *Lopez v. Comm'r of Soc. Sec.*, 622 Fed.Appx. 59, 60 (2d Cir. 2015) (summary order) (citing 20 C.F.R. § 404.1512; *Perez*, 77 F.3d at 47 (describing duty to develop record)). '[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record.' *Eusepi v. Colvin*, 595 Fed.Appx. 7, 9 (2d Cir. 2014) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). '[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.' *Lowry v. Astrue*, 474 Fed.Appx. 801, 804 (2d Cir. 2012) (unpublished opn.) (quotations and citations omitted).").
[22] Although Plaintiff makes this argument before the Court, he did not raise any similar objection at the administrative hearing.   Rather, it seems that at the hearing the VE and Plaintiff's counsel all viewed Plaintiff's work locating automobiles as past relevant work. Tr. 55-57.
[23] Tr. 45.
[24] Plaintiff refers to this evidence as coming from an "SSA vocational specialist," ECF No. 10-1 at p. 25.   Actually, the opinion was rendered by "M. Mead," who evidently was a "vocational specialist" consulted by the state agency disability examiner to render an opinion regarding "TSA," that is, "transferability of skills assessment." Tr. 75-76. The vocational specialist's qualifications are not indicated in the record. *See, generally, Nunnally v. Colvin*, No. 1:11CV460, 2014 WL 4114329, at *5 (M.D.N.C. Aug. 20, 2014) ("Social Security Ruling 00–4p clarifies that vocational experts are individuals who provide testimony before ALJs and vocational specialists provide evidence to adjudicators at the state agency disability determination services." *Jimenez–Cruz v. Astrue*, No. 09–1812(MEL), 2012 WL 1207387, at *14 n. 10 (D. Puerto Rico April 11, 2012) (unpublished); SSR 00–4p, 2000 WL

a "failure to consider conflicting evidence."[25]   Alternatively, Plaintiff argues that "it is unclear"

whether the ALJ's decision is unsupported by substantial evidence, or whether he applied the

correct test for determining if Plaintiff's self-employed work as a vehicle locator qualified as pasts

relevant work.[26]

However, the Court finds that these arguments lack merit.   As a preliminary matter, the

Court does not agree with Plaintiff's assertion that insofar as the ALJ failed to specifically discuss

the state disability examiner's finding that Plaintiff's automobile locator job "was not SGA," he

"failed to consider *probative evidence* that contradict[ed] his conclusion" that such work qualified

as past relevant work. (emphasis added).   Rather, the state examiner's/vocational specialist's

finding on that point was a mere bald assertion, lacking any obvious support in the record.

Moreover, as noted earlier, "the ALJ is not required to provide a written analysis about

the consideration of each piece of evidence." *Morine O. v. Comm'r of Soc. Sec.*, No. 20-CV-

6682MWP, 2022 WL 866249, at *6 (W.D.N.Y. Mar. 23, 2022).   Nor is the ALJ required to credit

or even discuss any prior finding by a state agency disability examiner,[27] concerning a

_____

1898704, at *1. Notably, "[n]either the SSA's rules, policies nor practices require that the medical and psychological consultants or vocational examiners who make medical and vocational determinations at DDS level be vocational specialists with qualifications the same as or similar to those of the vocational experts who advise administrative law judges at higher levels of SSA's disability claim review." *Laird v. Stilwill*, 969 F.Supp. 1167, 1177 (N.D.Iowa 1997). In fact, the administrative record in the present case never identifies the DDS examiner who performed Plaintiff's vocational analysis, let alone identifies that examiner's qualifications or methodologies.").

[25] ECF No. 10-1 at p. 2 ("The ALJ failed to consider evidence that conflicts with his conclusion that Plaintiff's automobile locator/automobile sales representative constituted substantial gainful activity and past relevant work[.]").

[26] *See*, ECF No. 10-1 at p. 25 ("Plaintiff's work activity for two hours per day for four to five days per week, and approximate pay per month [sic] does not appear to meet the criteria for substantial gainful activity[.]"); *see also, id.* at pp. 26-27 ("[I]t is unclear if the ALJ applied the proper test related to self-employment to determine if Plaintiff's work as an automobile locator was considered substantial gainful activity and past relevant work.")

[27] "Initial disability determinations are generally made by a state agency acting under the authority and control of the Secretary. 42 U.S.C. §§ 421(a), 1383b(a). In New York, the Office of Disability Determinations ("ODD") of the New York State Department of Social Services assesses requests for benefits. ODD's resolution of claims must be made in accordance with the Act and the standards and criteria contained in the relevant regulations and other

vocational issue, since such findings are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(2) ("Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, *we will not provide any analysis about how we considered such evidence in our determination or decision*, even under § 404.1520c: . . .  (2) Disability examiner findings. Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled.").

Plaintiff is therefore mistaken in claiming that the ALJ was required to consider the state agency disability examiner's/vocational specialist's prior finding that Plaintiff's past work as a vehicle locator was not SGA.   Nor has Plaintiff otherwise shown that the ALJ failed to consider other relevant evidence relating to that issue, or that the ALJ's finding is unsupported by substantial evidence.

Plaintiff has similarly not shown that the ALJ erred in his analysis of whether Plaintiff's past work as a vehicle locator was past relevant work.   On this point, Plaintiff argues that since his work as a vehicle locator was "self-employed" work, the ALJ was required to conduct an SGA analysis under SSR 83-34.[28]   However, the Court disagrees, since Plaintiff's "self employment" as a vehicle locator, for which he was paid a set amount per-car by the persons for whom he performed the service, did not involve the "economic value" concerns underlying the SGA tests

---

written guidelines of the Secretary. Disappointed claimants may seek federal administrative review by the SSA. 42 U.S.C. §§ 405(b)(1), 1383(c)(1); *see Bowen v. City of New York*, 476 U.S. 467, 471–72, 106 S.Ct. 2022, 2025–26, 90 L.Ed.2d 462 (1986). Upon exhaustion of administrative remedies, the claimant may seek judicial review in federal district court. 42 U.S.C. § 405(g)." *State of N.Y. v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).
[28]  ECF No. 10-1 at pp. 25-27.

14

set forth in SSR 83-34 to which Plaintiff refers.[29]  Moreover, any error by the ALJ to specifically apply SSR 83-34 would be harmless in any event, since Plaintiff's work as a vehicle locator clearly satisfies the first of the three SGA tests discussed in SSR 83-34 ("Test One: Significant Services and Substantial Income.   The Individual's work activity is SGA if he or she renders services that are significant to the operation of the business and if he or she receives a substantial income from the business.  . . .   The receipt of substantial income by the operator of a one-person business will result in a finding of SGA.").

> The ALJ's Alleged Error in Finding that Plaintiff Can Perform
> His Past Relevant Work as an Automobile Locator

Lastly, Plaintiff maintains that the ALJ erred "at Step Five" by finding that he "was capable of past work as an automobile locator/sales representative and had transferable skills."[30] Plaintiff asserts that the ALJ's finding was erroneous since it was "based on flawed vocational expert testimony," inasmuch as "there is no evidence that his past work was actually done as generally and as actually performed."[31]   In sum, Plaintiff argues that the job of automobile locator as he actually performed it does not match the DOT descriptions of the two jobs that were discussed at the hearing, "automobile locator," DOT No. 296.367-010 and "sales

---

[29]  *See*, Titles II & Xvi: Determining Whether Work Is Substantial Gainful Activity-Self-Employed Persons, SSR 83-34 (S.S.A. 1983) ("In determining whether a self-employed individual is engaging in SGA, consideration must be given to the individual's activities and their value to his or her business. Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits. An individual's services may help build up capital assets during a period of development when no profits are evident, or they may reduce losses during temporary periods of poor business conditions. On the other hand, a person who is incapable of rendering valuable services may receive a large income solely because of his or her capital investment in the business. Hence, it is necessary to consider the economic value of the individual's services, regardless of whether an immediate income results from such services.").
[30]  ECF No. 10-1 at p. 16.
[31]  ECF No. 10-1 at p. 16.

representative, automotive leasing," DOT No. 273.357-014.   Petitioner contends that the Commissioner's decision must therefore be reversed.   However, the Court disagrees.

As a preliminary matter, Plaintiff is incorrect to assert that the ALJ made the disputed finding at Step Five of the Sequential Evaluation.   Rather, as Defendant notes, the ALJ found at Step Four of the Sequential Evaluation that Plaintiff could perform his past relevant work, and therefore did not proceed to Step Five.   Defendant is also correct that, since the ALJ found Plaintiff could perform his past relevant work, transferability of skills is not an issue. *See, Martello v. Astrue*, No. 12-CV-215S, 2013 WL 1337311, at *5 (W.D.N.Y. Mar. 29, 2013) ("The arguments relative to transferability of skills and the medical-vocational guidelines are without merit because these issues arise only at step five of the sequential evaluation."); *see also*, *Solis v. Saul*, No. CV 18-06852-JEM, 2019 WL 3573520, at *6 (C.D. Cal. Aug. 6, 2019) ("Transferability of skills is a consideration at step five of the sequential process in determining whether the claimant obtained job skills that would assist the claimant in performing other work. 20 C.F.R. § 404.1568. Here, the ALJ at step four of the sequential process determined that Plaintiff could perform her PRW and never made nor needed to make any finding regarding transferability of skills only relevant at the fifth step of the sequential process.").

Nor has Plaintiff otherwise shown that the ALJ erred in finding that he could perform his past relevant work as an automobile locator.   The ALJ found, based on substantial evidence, including the VE's testimony, that with the subject RFC, Plaintiff could perform such past work as actually performed, which did not perfectly match either of the two DOT job titles which it most closely-resembled.   The ALJ also indicated that Plaintiff could perform the job of "automobile locator" as "generally" performed.   Plaintiff did not show that he was unable to perform the

automobile locator's job as he actually performed it.   Plaintiff insists, though, that he did not actually perform all the job duties described in the two relevant DOT listings.    However, even if that is true, such fact does not establish reversible error by the ALJ. *See, Lewis v. Comm'r of Soc. Sec.*, No. 3:16-CV-1267 (WBC), 2018 WL 557869, at *11 (N.D.N.Y. Jan. 16, 2018) ("Because the ALJ's finding that Plaintiff could perform this past relevant work as a building-construction inspector as actually performed is sufficient to negate a finding of disability at step four, any error in determining that Plaintiff could perform this work as generally performed is harmless error."); *see also, Filer v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 517, 522 (W.D.N.Y. 2020) ("Past relevant work is either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy.   The regulations do not require explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed.   In other words, the claimant has the burden of showing that she cannot perform past relevant work as she actually performed it and as that work is performed generally.") (citations and internal quotation marks omitted).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No.10) for judgment on the pleadings is denied, and Defendant's cross-motion (ECF No. 11) for the same relief is granted. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
        September 19, 2022            ENTER:

                                      CHARLES J. SIRAGUSA
                                      United States District Judge

17